UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH F.,                                    Case No. 22-12593

                          Plaintiff,

v.                                            Curtis Ivy, Jr.
                                              United States Magistrate Judge

COMMISSIONER OF SOCIAL
SECURITY,

                          Defendant.
_____/

## OPINION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Joseph F. brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits under the Social Security Act. This matter is before the Court on Plaintiff's motion for summary judgment (ECF No. 16), the Commissioner's cross-motion for summary judgment (ECF No. 19), Plaintiff's reply (ECF No. 23) and the administrative record (ECF No. 10).

For the reasons below, Plaintiff's motion for summary judgment (ECF No. 16) is **DENIED**, Defendant's motion for summary judgment (ECF No. 19) is **GRANTED**, and the Commissioner of Social Security's decision is **AFFIRMED**.

## I.    DISCUSSION

### A.    Background and Administrative History

Plaintiff alleges his disability began on March 13, 2014, when he was involved in an auto vehicle accident.  On October 21, 2013, he applied for disability insurance benefits.  (ECF No. 10, PageID.49).  His date last insured is December 31, 2014.  (*Id*. at PageID.51).  In his disability report, he listed the ailments below that diminished his ability to work: spinal fusion of S1-L5-L4 in 2009, right shoulder rotator cuff surgery in 2011, multiple breaks in his left arm and wrist from the March 2014 car accident, and a back and neck injury from the car accident.  (*Id.* at PageID.160).  His application was denied on December 23, 2014.  (*Id.* at PageID.49).

This is Plaintiff's second appeal to this Court for remand and rehearing of his application.  His first appeal was remanded to the Social Security Administration ("SSA") for an Appointments Clause violation concerning the appointment of the Administrative Law Judge ("ALJ") who heard his case the first time.  He was successful and appeared for a hearing before a new ALJ.  On July 8, 2022, the ALJ in this appeal issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (*Id.* at PageID.335-48).  Plaintiff later submitted a request for review of the hearing decision, which was denied.  Thus, the ALJ's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on December 28, 2022.

**B.    ALJ Authority**

Plaintiff brings two arguments in this appeal: the ALJ lacked authority to hear and decide his case because he was not properly appointed to the position, and that if he was properly appointed, he erred in consideration of Plaintiff's mental impairments.  The Court will first consider whether the ALJ was properly appointed.  The focus of this argument is Acting Commissioner of Social Security, Nancy Berryhill, and whether she was properly serving as Acting Commissioner. Berryhill purportedly ratified all ALJ appointments in July 2018, including the ALJ who heard and decided Plaintiff's case.  If she was not properly Acting Commissioner, then that ratification is void and the ALJ was not properly appointed and did not have the authority to hear Plaintiff's case.

1.    Factual Background of Appointments

On December 23, 2016, President Barack Obama issued an order of succession in the SSA in case the SSA's Commissioner position—a "principal officer" position, is vacant.  *Memorandum Providing an Order of Succession Within the Social Security Administration*, 81 Fed. Reg. 96337, 2016 WL 7487744 (Dec. 23, 2016).  President Obama's Order provided that the Deputy Commissioner of Operations ("DCO") would serve as the Acting Commissioner of the SSA if the Commissioner and Deputy Commissioner positions were vacant.

*Id.*  On January 20, 2017, the date of President Donald Trump's inauguration,

Carolyn Colvin, the Acting Commissioner of the SSA at the time, resigned.  *See*

*Brian T. D. v. Kijakazi*, 580 F. Supp. 3d 615, 620 (D. Minn. Jan 20, 2022).  During

Colvin's term as Acting Commissioner, the Deputy Commissioner position was

vacant.  *Id.*  Thus, in accordance with President Obama's order of success, DCO

Nancy Berryhill became the new Acting Commissioner of the SSA.  *Id.*

Berryhill remained in that role until March 2018 when the Government

Accountability Office ("GAO") issued a memorandum notifying the administration

that her acting service exceeding statutory time limits.  Berryhill's acting service

ended on November 16, 2017 under the Federal Vacancies Reform Act ("FVRA").

*See* U.S. Gov't Accountability Office, Violation of the Time Limit Imposed by the

Federal Vacancies Reform Act of 1998 – Commissioner, Social Security

Administration (Mar. 6, 2018), https://perma.cc/QL3Z-H97Q.  "Following the

GAO Notice, Berryhill stepped down as Acting Commissioner but continued to

lead the SSA as DCO."  *Brooks v. Kijakazi*, 2022 WL 2834345, at *14 (M.D.N.C.

July 20, 2022), *report and recommendation adopted*, 2022 WL 17832126

(M.D.N.C. Aug. 19, 2022).  On April 17, 2018, President Trump nominated

Andrew Saul to be the Commissioner of the SSA.  *Id.*  After President Trump's

nomination, Berryhill resumed her service as Acting Commissioner because the

SSA interpreted that her continued service was permitted by section 3346(a)(2) of the FVRA, "the so-called 'spring-back' provision." *Id.*

During her second term as Acting Commissioner, the Supreme Court decided *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018). There, the Court held that Administrative Law Judges were subject to the Appointments Clause. Before *Lucia*, lower-level SSA staff appointed ALJs. But under *Lucia*, this violated the Appointments Clause. On July 16, 2018, "[t]o address any Appointment Clause questions involving Social Security Claims," Berryhill, as Acting Commissioner, ratified the previous appointments of all the SSA's ALJs and approved those appointments as her own. Social Security Ruling 19-1p; *Titles II and XVI: Effect of the Decision in Lucia v. Securities and Exch. Comm'n (SEC) On Cases Pending at the Appeals Council*, 84 Fed. Reg. 9582-02, 2019 WL 1202036 (Mar. 15, 2019).

> 2.   Overview of Appointment Arguments

> a.   Plaintiff's Arguments

Berryhill was not properly Acting Commissioner under both the Appointments Clause and the FVRA. The Appointments clause requires that the president appoint principal officers or those acting temporarily as principal officers. The day after President Trump took office, Berryhill assumed the Acting Commissioner role pursuant to President Obama's order of succession. Thus, in effect, President Obama appointed Berryhill, not President Trump, or President

Obama appointed her *with* President Trump. But the Appointments Clause requires the president, not the former president, appoint such officials. Appointment is complete when the president signs a commission, which Trump did not do for Berryhill. And he argues the FVRA does not allow direction by succession order; the statute says the president must "direct" a person to act. President Trump never "directed" Berryhill to act as commissioner. Berryhill therefore was never properly the Acting Commissioner under the FVRA.

Even if Berryhill's Acting status did not offend the Appointments Clause, she could not ratify or appoint inferior officers under the Clause. Only principal officers can appoint inferior officers, such as ALJs. Acting heads of departments are inferior officers. Thus Berryhill was an inferior officer. The only way she could have appointed ALJs or ratified ALJ appointments was if she herself had supervision by the head of the SSA. There was no head of the SSA, which is why she was acting as the head.

Next, assuming Berryhill was properly acting as commissioner, her post ended November 16, 2017, at the expiration of the FVRA's time limit on acting service. Plaintiff argues that the FVRA does not allow two separate period of acting service. The statute, 5 U.S.C. § 3346, reads:

> (a) Except in the case of a vacancy caused by sickness, the person serving as an acting officer as described under section 3345 may serve in the office—

> (1) for no longer than 210 days beginning on the date the vacancy occurs; or
>
> (2) subject to subsection (b), once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate.

Plaintiff reads this statute to say that a person can assume acting status for no longer than 210 days, unless a nomination occurs during that 210 period. Then, the person may serve from the date of the nomination for the period that the nomination is pending. In other words, subsection 2 is a tolling provision. An Acting Commissioner cannot serve the 210-day period, leave the office after expiration of 210-day period, then "spring back" to the position when the president puts forth a nomination. Plaintiff reads the statute in that way because the statute says that a "person serving as an acting officer" may serve for a limited time. "Serving" is an active present participle, connoting service that is in progress, not service that might happen. Thus, for a person to serve when a nomination is submitted, they must already be serving in the position, i.e., serving their 210-day period. If the 210-day period ends without a nomination, no one is "serving," so the office remains vacant. Next, the statute uses the disjunctive "or" in the list of time periods. The ordinary meaning of "or" is one or the other, not both. Berryhill could serve for no longer than 210 days or during a nomination, but not both separately.

Plaintiff then argues that even if subsection 2 were a spring-back provision, Berryhill was not in line to assume the position under President Obama's order of succession because she vacated her DCO position to take the Acting position. They argue that the DCO position is in Senior Executive Service ("SES") under federal personnel law.  The Acting Commissioner position is excepted service, which is separate from SES.  One person cannot hold both an SES position and an excepted service position.  This interpretation is bolstered, says Plaintiff, by the fact that SES jobs in SSA are supervised by the head of the department.  Berryhill could not be the acting head and maintain her role as the supervisee in the DCO job.

When her excepted service ended, she did not automatically retake DCO. Only the head of the department could approve her retaking the job.  There was no commissioner at that time, so she did not have approval to resume her DCO role. At best, she was an Acting DCO.  But that role is not in President Obama's order of succession.

### b.    Commissioner's Arguments

The Commissioner argues judicial estoppel should apply to prevent Plaintiff's Appointments Clause arguments.  In the first appeal, as mentioned above, the plaintiffs were denied remand in the District Court on their arguments that the ALJs were improperly appointed.  While those cases were on appeal,

Berryhill purported to ratify the ALJ appointments.  Those cases were remanded for hearings before the ALJs "properly appointed" by Berryhill's ratification.  In those appeals, Plaintiffs argued that remand was necessary for those whose hearings occurred before the ratification.  The Sixth Circuit agreed.  The Commissioner says the appeals now before the Court are Plaintiffs' way of arguing a position inconsistent with what they took earlier in the cases.  In the first appeal, the plaintiffs argued a new hearing would cure the Appointments Clause problem, and now argue that the new hearings did not cure the Appointments Clause issue.

Turning to the Appointments Clause and FVRA arguments, the Commissioner argues the following.  Berryhill properly became Acting Commissioner the day after President Trump was inaugurated.  President Obama's order of succession named the DCO to be the acting commissioner if both the commissioner and deputy commissioner positions were vacant.  As the Eighth Circuit held, President Obama's succession order persisted into President Trump's presidency; presidential orders carryover across administrations.  There is no requirement that the sitting president adopt prior orders or directives.  Also no requirement exists that demands acting heads of departments have commissions signed by the president.

Persons serving as acting heads of department can perform all the functions of the principal.  Berryhill did not need a supervisor for her to have the authority to appoint ALJs.

As for the FVRA, the Commissioner reads the statute as the Fourth and Eighth Circuits do: the statute allows a person to serve as Acting Commissioner for 210 days from the date of vacancy or during the pendency of a nomination, or both.  Subsection 2 is a spring back provision which can also act as a tolling provision if a nomination occurs during the 210-day period.  The Commissioner and most courts to address this argue that the prefatory language, "the person serving as an acting officer[,]" is not a statement that subsection 2 applies to those currently serving as an acting officer.  Rather, read in context, the prefatory language is merely defining to whom these time limits apply: "the person serving as an acting officer as described under section 3345."  Thus, a person need not be currently serving as acting commissioner to be permitted to serve during a first or second nomination for the office.

And a person may serve during the pendency of a nomination even after the 210 days have elapsed and the position was vacant.  The "or" separating the 210-day limit and the nominations limit, here, is not disjunctive.  The statute allows for two separate periods of service.  This is confirmed in Senate history, the Office of Legal Counsel, and the Government Accountability Office.

The Commissioner posits that Berryhill did not vacate her DCO position when she became an Acting because the statute governing removal of SES officers does not include temporary Acting service as a means of "removal" from SES. So after Berryhill's Acting service ended in November 2017, she rightfully resumed her DCO position. Then, in April 2018 when Saul was nominated for Commissioner, she was in line to become the Acting Commissioner, which she did.

### 3.   Judicial estoppel and *Ramsey*

The first time Plaintiff sought remand for an Appointments Clause issue, which was after Berryhill purportedly ratified the ALJ appointments in July 2018, they argued that all that need happen is a remand for a hearing before a newly ratified ALJ. He won. Now, he argues that the ratification, for several reasons, did not cure the Appointments Clause issue. The Commissioner says he is estopped from making these arguments here because they differ from the positions taken in the first appeal.

The doctrine of judicial estoppel "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n. 8 (2000)). "The application of judicial estoppel is not limited to bar the assertion of inconsistent positions in the

same litigation, but is also appropriate to bar litigants from making incompatible statements in two different cases." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001) (citation omitted). Its purpose is "to preserve 'the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship.'" *Browning v. Levy*, 283 F.3d 761, 776 (6th Cir. 2002) (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990)). It is a "discretionary equitable doctrine." *Stanley v. FCA US, LLC*, 51 F.4th 215, 218 (6th Cir. 2022) (citing *New Hampshire*, 532 U.S. at 750).

"The circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *New Hampshire*, 532 U.S. at 750. The Supreme Court has identified several factors for district courts to consider when applying the doctrine:

> (1) whether "a party's later position [is] clearly inconsistent with its earlier position;" (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled;" and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

*Shufeldt v. Baker, Donelson, Bearman, Caldwell & Berkowitz, PC*, 855 F. App'x 239, 243 (6th Cir. 2021) (quoting *New Hampshire*, 532 U.S. at 750–51). District courts may also be informed by "additional considerations . . . in specific factual

contexts." *New Hampshire*, 532 U.S. at 751.  Stated another way, "judicial estoppel is a flexible doctrine that is designed to consider all of the circumstances in evaluating whether the [party's] inconsistent statements justify estopping the [party] from pursuing [its] claims." *Thompson v. Davidson Transit Organization*, 725 F. Supp. 2d 701, 710 (M.D. Tenn. 2010).  Ultimately, however, the doctrine of judicial estoppel "should be 'applied with caution to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement.'" *New Hampshire*, 532 U.S. at 751 (citation omitted).  Neither party engaged with these factors.

The Commissioner points to language in a footnote in *Ramsey v. Comm'r of Soc. Sec.*, 973 F.3d 537 (6th Cir. 2020), Plaintiff's first appeal that determined the ALJs had not been appointed consistent with the Appointments Clause.  In that footnote, the court discussed a Supreme Court decision affirming that, where appointments must be made by the president or head of department, to appoint an official otherwise violates the Appointments Clause and the remedy is a de novo hearing before a constitutionally appointed officer.  *Id.* at 539, n. 1.  The court noted that the Acting Commissioner, Berryhill, ratified ALJ appointments on July 16, 2018, "thereby foreclosing any future Appointments Clause challenges to ALJ

decisions after that date."[1]  *Id.*  In this way, the court was accepting Plaintiff's argument that his case needed to be remanded for de novo hearing before a constitutionally appointed (Berryhill-ratified) ALJ.

Plaintiff's position here differs from the position advanced in the first appeal.  He abandons the argument that Appointments Clause issues are cured by remand for a hearing before a Berryhill-ratified ALJ.  But the Court cannot say that Plaintiff has an unfair advantage in raising this new argument here.  The Commissioner has responded to the arguments in full.  And whether the United States Constitution has been violated is no trivial matter.  Many other courts, including those in this Circuit, have taken up the arguments Plaintiff advances here.  To allow some plaintiffs to raise these same arguments across the country but not others would be inequitable.  That these arguments differ from past arguments is not cause, alone, to decline hearing them in this Court.

### 4.   Appointments Clause and FVRA

The Appointments Clause provides that, for principal officers such as the Commissioner of Social Security, the president must nominate a candidate and with the advice and consent of the Senate, that person will be appointed to the

---

[1] This dicta is not binding in that it alone does not limit a plaintiff arguing that there are further Appointments Clause issues.

position.[2]  U.S. Const. art. II, § 2, cl. 2.  Congress can vest the appointment of inferior officers in the president, the courts, or in department heads.  *Id.*  The relevant FVRA provision for the appointment of officers temporarily filling the role of a principal officer states that "the President (and only the President) may direct an officer or employee of such Executive agency to perform the functions and duties of the vacant office temporarily in an acting capacity."  5 U.S.C. § 3345(a)(3).

Berryhill became Acting Commissioner the day after President Trump took office pursuant to an order of succession issued by President Obama during his last term in office.  Her accession to the role did not violate the Appointments Clause or FVRA.  Both the Appointments Clause and the FVRA provide that the president may appoint an acting head of department—the president alone, not someone in the president's office or from another branch of the government.  Berryhill assumed the role pursuant to an order issued by the president, and the president alone.  The FVRA provides that the president shall direct an employee to assume the acting role.  The succession order was a presidential direction—in the event of a vacancy at the Commissioner and Deputy Commissioner levels, the Deputy

---

[2] Plaintiff preserved the argument that Berryhill's acting service exceeded the time allowed under the Appointments Clause.  He acknowledges the argument is foreclosed in *Rap v. FHFA*, 50 F.4th 562 (6th Cir. 2022), but raises the issue in the event that the Supreme Court reverses *Rap*.

Commissioner of Operations is directed by the president to act as Commissioner. In this way, Berryhill's tenure as Acting Commissioner followed the text of the Constitution and FVRA—Berryhill was appointed by the president.

Plaintiff argues that the history of the Appointments Clause and FVRA show that only the sitting president can, with affirmative action, appoint the Acting Commissioner. For support, he sites letters between Justice John Marshall and President Thomas Jefferson, in which Marshall tells Jefferson he must reappoint him as Acting Secretary of State because former President John Adams' appointment of Marshall to the post would not survive the transition of the administrations. (ECF No. 16, PageID.814). Marshall's understanding of the Appointments Clause and the letters between him and Jefferson are not binding on this Court.

Plaintiff also insists that, pursuant to *Marbury v. Madison*, 5 U.S. 137 (1803), the Acting Commissioner's appointment is complete only when the president signs and delivers the commission. He says President Trump did not complete Berryhill's appointment because no commission was prepared, signed, or issued for Berryhill. According to Plaintiff, the process of presidential signing and forwarding of the commission applies equally to permanent and temporary or acting officials. For support, he points to *D'Arco v. United States*, 194 Ct. Cl. 811 (1971). *D'Arco* does not support the position that the president must sign and issue

a commission to complete the appointment of an acting principal officer.  In

*D'Arco*, a full commission was required for D'Arco to assume the temporary role

of major in the Navy.  But his role was temporary only in that, unlike for Berryhill,

this was a recess or interim appointment pending confirmation by the Senate.  *Id.*

at 813.  Berryhill was not awaiting confirmation by the Senate to become

Commissioner.  *D'Arco* does not direct that the president must sign and deliver a

commission for acting officers who are not recess or interim appointments pending

action by the Senate.

Other arguments directed at the succession order and FVRA include that the

FVRA does not allow for appointment by succession order and that the order did

not remain in effect after President Obama's term ended.  Plaintiff notes a different

statute that says the President may fix the order of succession.  Since the FVRA

doesn't contain this language, Plaintiff posits it does not allow direction by

succession order.  (ECF No. 16, PageID.826).  The Court is not persuaded.  The

FVRA allows the president to direct an employee to assume the acting position.

President Obama's order of succession directs an SSA employee to assume the

acting position.  This does not contravene the statute.  And the order of succession

remained effective into Trump's presidency.  This is confirmed by many cases

addressing this issue and by the Congressional Research Service, which stated that

"Presidential directives with ongoing effect remain in force across presidential

transitions, but generally may be amended, repealed, or replaced by the President." Congressional Research Service, *Presidential Directives: An Introduction* (Nov. 13, 2019) (found at https://perma.cc/47VG-NPBE).  Plaintiff did not cite authority establishing otherwise.

The Court is unpersuaded by Plaintiff's contention that orders of succession are different from executive orders which remain effective because executive orders cover subjects in the President's own constitutional authority, while here the appointment of an acting commissioner was placed in Congress's authority.  This is unpersuasive because Congress gave the president the authority to direct an employee to assume the acting position through the FVRA.  The president did just that through the order of succession.  Plaintiff also argues that President Obama's order "does not[] create a right or benefit" in any other person, and if President Trump effectively directed Berryhill to act as commissioner, the presidential direction is a benefit created.  This argument is unclear and does not do much to invalidate a presidential order from one administration carrying over to the next administration.

This Court is not alone in these conclusions.  There is persuasive value in the number of other Circuit and District Courts ruling similarly on these arguments.  In *Dahle v. Kijakazi*, 62 F.4th 424, 429 (8th Cir. 2023), the court reasoned that President Obama's succession order complied with the FVRA's directive that the

president "direct" an agency employee to serve in an acting capacity—the order directed that the DCO become Acting Commissioner in the event that both the Commissioner and Deputy Commissioner positions be vacant.  The court also held that Obama's order carried forward into President Trump's presidency.  "The general rule is that presidential orders without specific time limitations carry over from administration to administration."  *Id.* (citing Benjamin B. Wilhelm, *Presidential Directives: An Introduction*, Congressional Research Service 1 (Nov. 13, 2019) ("Presidential directives with ongoing effect remain in force across presidential transitions")).  President Trump did not have to take affirmative action to keep existing orders in place.  *See also Rush v. Kijakazi*, 65 F.4th 114, (4th Cir. 2023); *Bauer v. Kijakazi*, 2022 WL 2918917, at *2-3 (N.D. Iowa July 25, 2022); *Jerry Mabe M. v. Kijakazi*, 2023 WL 3534334 (D. Kan. May 18, 2023); *Drake v. Kijakazi*, 2023 WL 3060811 (M.D. Penn. Apr. 24, 2023).

Dahle also dismissed the argument that allowing a prior president's order of succession to appoint an acting official is to "saddle upon its successors appointees whose official terms are to begin thereafter."  (ECF No. 16, PageID.826) (citation omitted).  "[A]n incoming president can undo a previous presidential order."  *Dahle*, 62 F.4th at 429.  For that reason, the incoming president is not "saddled" with its successors' appointees.

In sum, the Court concludes that Berryhill's accession to the role of Acting Commissioner did not violate the Appointments Clause or the FVRA.

5.    FVRA Time Limitations on Acting Service

Berryhill properly assumed the role of Acting Commissioner during January 2017 through November 16, 2017.  The next issue is whether she could return to the role under the FVRA time limitations when President Trump made a nomination for the position.  Once again, the FVRA allows an acting head to serve (1) for 210 days from the time the vacancy occurs "or" (2) once a first  or second nomination is submitted to the Senate.  Plaintiff argues that subsection 2 tolls the period in subsection 1, but it is not a separate, distinct period for acting service.  In other words, a person may serve under subsection 2 only if the nomination occurred while the person was serving the initial 210-day period in subsection 1.

In contested issues of statutory interpretation, the Court begins "with the language of the statute itself," *Caraco Pharm. Lab'ys, Ltd. v. Novo Nordisk A/S*, 566 U.S. 399, 412 (2012) (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989)), examining its "plain meaning . . . by looking to the statutory scheme as a whole and placing the particular provision within the context of that statute." *Saks v. Franklin Covey Co.*, 316 F.3d 337, 345 (2d Cir. 2003).

Based on the plain meaning of the statute, the Court finds that the FVRA authorizes a person who completes 210 days of acting service to begin serving

again later under subsection 2 once a nomination is sent to the Senate.  *See Dahle*,

62 F.4th at 427 ("Subsection 2 can act as a tolling provision to subsection 1.  But it

also provides an independent period of time for an individual to serve as an acting

officer.").  The subsections are joined by the word "or."  "Or" can be used as

disjunctive, meaning "the words it connects are to 'be given separate meanings,'"

*Rush*, 65 F.4th at 119 (quoting *United States v. Woods*, 571 U.S. 31, 45-46 (2013)),

"unless the context dictates otherwise," *Reiter v. Sonotone Corp.*, 442 U.S. 330,

339 (1979).  The context does not dictate otherwise—subsections 1 and 2 have

separate meanings, separate time periods.

   This "or" does not, however, mean that both time periods cannot apply to a

person serving as Acting Commissioner.  As the Fourth Circuit pointed out, "[t]he

word 'or' has an inclusive sense (A or B, or both) as well as an exclusive one (A or

B, not both)," and is "generally used in the inclusive sense."[3]  *Rush*, 65 F.4th at

120 (citation omitted).  As an example, the Fourth Cited said this: "When a waiter

offers a patron 'coffee or dessert,' an ordinary English speaker understands that he

can have both coffee *and* dessert if he so chooses."  *Id.*  Notably, Plaintiff does not

rest his argument on the position that "or" in this statute is only exclusive.  He

argues that a person in acting service can serve for the 210-day period *and* during a

---

[3] Plaintiff argues that the Court would be reading "and" in place of "or" if it holds that the two time limits can be discontinuous.  Plaintiff did not address the general reading of "or" to be inclusive, not exclusive.  The Court is not replacing "or" with "and."

nomination, but only if the nomination is sent to the Senate during the 210-day period (an inclusive "or"). But if the nomination is sent after the 210 days, Plaintiff says "or" is exclusive and the position must remain vacant while the nomination is pending. So he views "or" as both inclusive and exclusive. But the same word cannot have opposite meanings in a statute. If Congress meant to exclude acting service after the 210-day period, it would have made that clear. To view the "or" as exclusionary, we must read words into the statute, which the Court cannot do.

Legislative history confirms the Court's reading of the statute. The Senate Government Affairs Committee report on proposed language for the FVRA states that an "acting officer may serve even if the nomination is submitted after the 150 days has passed." S. Rep. No. 105-250, 1998 WL 404532, at *14 (July 15, 1998). The only change between the proposed language and the enacted version of the FVRA is an increase in the number of days an individual could serve as an acting official, from 150 to 210 days. Other courts agree. *See Kring-Schreifels v. Kijakazi*, 2023 WL 3097210, at *10 (E.D. Pa. Apr. 26, 2023); *see also Bauer*, 2022 WL 2918917, at *8-9; *Brent Z. v. Kijakazi*, 2023 WL 1110449, at *16 (D. Minn. Jan. 30, 2023).

The prefatory clause does not dictate otherwise. Plaintiff maintains that use of the present participle "serving" in the prefatory clause shows that the two

subsections are discontinuous because, in his view, the prefatory clause means a person must be serving the 210-day period to be eligible to serve during a nomination.

Reading the statute as a whole, as the Court must, the Court disagrees with Plaintiff's position. The statute states, "Except in the case of a vacancy caused by sickness, the person serving as an acting officer as described under section 3345 may serve in the office" for 210 days or during a nomination. 5 U.S.C. § 3346(a). The active verb in section 3346(a) is not "serving" but "may serve." *Bauer*, 2022 WL 2918917, at *5. The "more straightforward and common sense interpretation" of section 3346(a) is to view "serving" in its context in the clause "the person serving as an acting officer described under section 3345." *Brooks v. Comm'r of Soc. Sec.*, 2022 WL 2834345, at *16 (M.D.N.C. July 20, 2022); *Bauer*, 2022 WL 2918917, at *5. In context, the clause is "merely descriptive" and explains that the "time limits [in section 3346(a)] apply to acting officers under Section 3345 of the FVRA as opposed to acting officers under other, office-specific vacancy statutes." *Brooks*, 2022 WL 2834345, at *16.

Adopting Plaintiff's view of the prefatory clause would create an absurd result. *Coe v. Kijakazi*, 2023 WL 554119, at *13 (D.S.C. Jan. 27, 2023). It would be nonsensical for time limits to apply only to persons already serving as an acting head "and would create a conflict with section 3345 (because it would bar the

President from designating an alternative acting official after the first assistant

assumed the role by default).” *Garcia v. Kijakazi*, 2023 WL 2540441, at *10 (S.D.

Fla. Mar. 1, 2023), *report and recommendation adopted*, 2023 WL 2536491 (S.D.

Fla. Mar. 16, 2023) (citing *Brooks*, 2022 WL 2834345, at *16); *see also Dahle*, 62

F.4th at 428; *Rush*, 65 F.4th 114, 121-22. “Section 3346 does not grant the power

to serve, but places time restrictions on service under § 3345.” *Dahle*, 62 F.4th at

428.

The Court holds that § 3346(a)(2) is a spring-back provision allowing for

acting service during or after the initial 210-day period.[4] Thus Berryhill was

properly Acting Commissioner when she “sprung back” to the role after Trump

sent a nomination to the Senate during April 2018, after the initial 210-day period

expired.

6.    <u>Berryhill’s Eligibility to “Spring-Back”</u>

Plaintiff contends that Berryhill did not properly return to her DCO role after

her 210-day period of acting service. This is important because if Berryhill was

not DCO, she could not spring-back to Acting Commissioner after President

---

[4] In *N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 296 (2017), the Supreme Court described §
3346 as a tolling provision. Plaintiff mentions this as support for his reading of the statute. The
Commissioner responds that *SW General* was not considering how subsection 2 operates when a
nomination is submitted after the initial 210-day period. In the Court’s view, *SW General’s* brief
description of the subsection is not a binding statement on the interpretation of the statute. First,
the Court was not interpreting the statute with the facts presented here. Second, the Court began
the description with the qualifier “in most cases,” which means the Court perhaps knew that
there may be other interpretations of the statute. Finally, it is non-binding dicta.

Trump's nomination for Commissioner—President Obama's succession order named the DCO as the person to temporary fill the vacant role.

One of Plaintiff's arguments on this points to the "incompatible office" doctrine to demonstrate that Berryhill permanently vacated her DCO role when she became Acting Commissioner in January 2017.  Support for the doctrine comes from 1970s memoranda.  (ECF No. 16, PageID.839-40).  The gist of the doctrine is that a person cannot hold both the supervisor and supervised positions.  Here, it would mean that Berryhill could not be Acting Commissioner and DCO because the Commissioner supervises the DCO.  But it does not appear that Berryhill ever purported to hold both positions simultaneously.  In fact, as Plaintiff notes, while she was Acting Commissioner, another person became Acting DCO.  (ECF No. 23, PageID.942).  There is no evidence suggesting Berryhill fulfilled the duties of both roles at the same time.  Thus, this argument is unavailing.

Plaintiff next asserts that the Appointments Clause prohibited her unilateral return to DCO because the Clause requires approval of the department head to be appointed an inferior officer.  Of course, SSA did not have a department head at that time.  Plaintiff cited no direct authority to support the proposition that Berryhill vacated the DCO role such that she required reappointment after her acting service ended.  Plaintiff suggests that anyone tapped to perform the duties and functions of a principal officer forfeits their regular role in federal service.

This cannot be the case.  It would be difficult to appoint an acting officer if the deal was that they were losing their original job and would have to reapply in the hopes to obtain the original job or a similar job.  Rather, it is more practical that their original job remains available for their return after 210 days of service or service while a nomination is pending.  If this was not the case, one might expect that the DCO role would be filled permanently rather than by a person acting as DCO while Berryhill acted as Commissioner.

Plaintiff also points to the federal employment statute for reinstatement in SES.  He contends that the statute prohibited Berryhill's return to DCO because it requires that she apply for the position after separating from the Presidential appointment outside the SES.  The statute provides:

> A career appointee who is appointed by the President to any civil service position outside the Senior Executive Service and who leaves the position for reasons other than misconduct, neglect of duty, or malfeasance shall be entitled to be placed in the Senior Executive Service if the appointee applies to the Office of Personnel Management within 90 days after separation from the Presidential appointment.

5 U.S.C. § 3593(b).  On its face, this statute would appear to support Plaintiff's point.  Berryhill was appointed by the President to a position outside SES, and there is no evidence that she reapplied for her DCO role.  That said, as discussed above, Berryhill was not appointed Acting Commissioner at the expense of her

DCO role.  In other words, it is unclear, and Plaintiff has not made the case, that this statute applies in this context.

In sum, the Court concludes that Berryhill did not vacate her DCO role and properly resumed DCO after the expiration of her first period of acting service. Thus, she was eligible to spring-back to Acting Commissioner when President Trump made a nomination for Commissioner.

### 7.   Authority of the Acting Commissioner

 Plaintiff argues that Berryhill's ratification of the ALJs in July 2018 violated the Appointments Clause because inferior officers, such as Berryhill as Acting Commissioner, are not permitted to make final decisions, such as appointing ALJs, without supervision of a principal officer.

The Appointments Clause states that Congress may "vest the appointment of . . . inferior Officers . . . in the Heads of Departments."  U.S. Const. art. II, § 2, cl. 2.  Here, the department head is the Commissioner of Social Security, who is a principal officer nominated by the president and confirmed by the Senate.  An Acting Commissioner temporarily filling the role remains an inferior officer. *United States v. Eaton*, 169 U.S. 331, 343 (1898).

Like plaintiffs before him, Plaintiff here relies on *United States v. Arthrex, Inc.*, 141 S. Ct. 1970 (2021).  There, the Supreme Court stated "that the exercise of executive power by inferior officers must at some level be subject to the direction

and supervision of an officer nominated by the President and confirmed by the

Senate."  *Id.* at 1988.  Before the Court in *Arthrex* was the question whether

Administrative Patent Judges ("APJs") were properly appointed to their positions

given the authority they had.  APJs were among those who sat on the Patent Trial

and Appeal Board, which made final decisions on patentability in the context of

inter partes review.  *Id.* at 1977.  APJs were inferior officers because they were not

appointed by the President with the advice and consent of the Senate.  Instead,

APJs were appointed by a department head, the Secretary of Commerce.  The

problem in that case was that the APJs were making final decisions for the Patent

and Trade Office, unreviewable by the Secretary of Commerce or any other

principal officer in the Executive Branch.  *Id.* at 1977-78.  But only principal

officers can wield such power.  Thus, APJ power conflicted with the Appointments

Clause.  *Id.* at 1985.  To remedy the violation, the Court held that the Director of

the Patent and Trademark Office shall have the authority to review decisions and

issue decisions themself on behalf of the Trial and Appeal Board.

Like other courts addressing this argument, this Court finds that *Arthrex*

does not support Plaintiff's position.   First, *Arthrex* is not on all fours with this

case because the Supreme Court was not deciding the authority of an acting

department head and whether that acting official required supervision to make

binding decisions.  The Court stated it was not "address[ing] supervision outside

the context of adjudication." *Id.* at 1986.  Acting department heads present entirely

different questions.  Indeed, the dissent noted that *Arthrex* does not explain

whether an inferior officer filling the vacant office of a principal officer can make

final decisions.  *Id.* at 2004.  Thus, the pronouncements in that case do not have the

strongest value.

Second, unlike with APJs, the Acting Commissioner is accountable directly

to the President.  The Appointments Clause requires that officers exercising

Executive power be accountable "to the public through a clear and effective chain

of command down from the President." *Id.* at 1979 (quotation omitted).  That is

why the usual case of presidential nomination and Senate confirmation guarantees

accountability for the appointee's actions because the "blame of a bad nomination

would fall upon the president singly and absolutely." *Id.*  But the same was true

for Berryhill, despite her lack of Senate confirmation.  If she made bad decisions,

the President could fire her.  She was directly accountable to the President, as is the

Commissioner of Social Security.  This makes sense, since she was performing the

functions and duties of the Commissioner of Social Security.  Congress placed

time limits on how long a person could serve as an acting department head

preventing an inferior officer from performing the functions and duties of the

department head without end, keeping them from transforming from a temporary

inferior officer to a permanent inferior officer acting as a principal officer.

Third, related to the first two points, is that the Supreme Court has addressed the authority of an inferior officer temporarily filling the role of a principal officer in *United States v. Eaton*, 169 U.S. 331 (1898). As the Court explained,

> [t]he claim that congress was without power to vest in the president the appointment of a subordinate officer called a 'vice consul,' to be charged with the duty of temporarily performing the functions of the consular office, disregards both the letter and spirit of the constitution. Although section 2 of article 2 of the constitution requires consuls to be appointed by the president 'by and with the advice and consent of the senate,' the word 'consul' therein does not embrace a subordinate and temporary officer like that of vice consul, as defined in the statute. The appointment of such an officer is within the grant of power expressed in the same section, saying: 'But the congress may by law vest the appointment of such inferior officers, as they think proper, in the president alone, in the courts of law or in the heads of departments.' Because the subordinate officer is charged with the performance of the duty of the superior for a limited time, and under special and temporary conditions, he is not thereby transformed into the superior and permanent official. To so hold would render void any and every delegation of power to an inferior to perform under any circumstances or exigency the duties of a superior officer, and the discharge of administrative duties would be seriously hindered.

*Id.* at 343. What the Court is saying is that an inferior officer can temporarily fill the role of a principal officer, fulfilling all the functions and duties of that office, without necessarily violating the Constitution. The Court is unaware of case law since *Eaton* stating any differently.

The express grant of authority to fulfill the functions and duties of the Commissioner in the FVRA also supports this position.  The FVRA permits the president to direct an officer or employee to temporarily fill the vacant principal officer "to perform the functions and duties of the vacant office . . . in an acting capacity."  5 U.S.C. § 3345(a)(3).   The Supreme Court has observed that where Congress expressly vests in another the authority to exercise the duties and functions of the vacant office, that person "may exercise all powers of the office in which they are serving."  *Nw. Immigrant Rights Project v. United States Citizenship and Immigr. Servs.*, 496 F. Supp. 3d 31, 68 (D.D.C. 2020) (citing *Ryan v. United States*, 136 U.S. 68, 81 (1890) and *Keyser v. Hitz*, 133 U.S. 138, 145-46 (1890)).  The Commissioner of Social Security has the power to appoint ALJs.  The FVRA expressly gave Berryhill the role to "perform the functions and duties of the office" of the Commissioner.  Thus, she had the authority to appoint ALJs.  And her doing so in her short time as Acting Commissioner did not violate the Constitution.

8.     FVRA Ratification Bar

The FVRA precludes ratification of actions that have no force or effect.  The statute bars persons who are not Acting Commissioner to perform a duty or function of the Acting Commissioner.  Performance of such duties by someone without that title "shall have no force or effect."  5 U.S.C. § 3348(d)(1).  Actions

having no force or effect "may not be ratified." *Id.* at § 3348(d)(2).  The ALJ who heard Plaintiff's disability case was appointed by an SSA official, not the Commissioner or an Acting Commissioner.  Explained above, this appointment violated the Constitution.  On remand, Plaintiff's case was heard by an ALJ whose appointment was ratified by Berryhill as Acting Commissioner in July 2018. Plaintiff argues this violates the FVRA because the ALJ's first appointment by SSA staff had no force or effect, and Berryhill could not ratify that appointment under the statute.  For this reason, Plaintiff seeks remand.  The Commissioner produced Berryhill's ratification document from July 2018.  Therein, Berryhill both ratifies the appointments of the ALJs and "approve[s] these appointments as [her] own."  (ECF No. 25-1, PageID.952).  Thus, the Commissioner argues the ALJ appointments were effective as of the date of her approval, at the latest (if not retroactive to the date of their initial appointments by SSA staff).

Section 3348(a)(2) defines "function or duty" as "any function or duty of the applicable office" that "is established by statute" or "by regulation" and "is required by statute" or "by regulation to be performed by the applicable officer (and only that officer)."  There is no statute or regulation requiring the Commissioner to appoint ALJs.  *Crisco v. Kijakazi*, 2023 WL 2142681, at *23 (M.D.N.C. Feb. 21, 2023); *Sidney M. v. Kijakazi*, 2022 WL 4482859, at *14 (N.D. Iowa Sept. 26, 2022) ("SSA staff was not performing a 'function or duty' of the

vacant office of the Commissioner when it appointed ALJs prior to *Lucia*[ ]. As such, I do not find that ratification of the ALJs' appointments was barred under § 3348 based on the initial appointment by lower-level staff.")).  Plaintiff cites 42 U.S.C. § 902(a)(4) as stating that the "[SSA] Commissioner shall appoint . . . officers[,]" and thus argues there is a statute requiring the Commissioner to appoint ALJs.  (ECF No. 16, PageID.845) (purporting to quote 42 U.S.C. § 902(a)(4).  Yet § 902(a)(4) does not contain a directive that the Commissioner appoint certain officers.  Rather, this subsection merely states that the Commissioner of Social Security will have authority and control over all personnel.  Plaintiff's language purportedly quoted from the statute appears nowhere in the statute.  So Plaintiff has not identified a statute or regulation that requires the Commissioner to appoint ALJs.  *Lucia*, of course, made clear that the Appointments Clause requires that inferior officers be appointed by the President, a court of law, or by the head of a department, not by lower-level staff in an executive agency.  But the Constitution is not a statute or regulation.  Thus, a plain reading of the FVRA reveals that SSA staff were not performing a "function or duty" of the Commissioner when they appointed ALJs.  So the ratification bar does not apply here.

### C.    ALJ's Treatment of the Treating Physician Opinion

#### 1.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the

sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 13, 2014, through the date last insured (December 31, 2024).  (ECF No. 10, PageID.338).  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease (lumbar spine) with radiculopathy, mild osteoarthritis (bilateral hips), status post rotator cuff repair (right shoulder), and a full thickness tear with tendinopathy (left shoulder).  (*Id.*).  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id.*).  **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[5] and determined that Plaintiff had the RFC:

> to perform light work . . . with the following additional limitations:
> - Can occasionally climb stairs or ramps, but never climb ladders, ropes, or scaffolds;
> - Can occasionally balance, stoop, bend, kneel, crouch, or crawl;
> - Can occasionally reach overhead with the left upper extremity; and
> - Is limited to frequent handling with the left upper extremity.

(*Id.* at PageID.338-47).  At **Step 4**, the ALJ determined that Plaintiff could perform

---

[5] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

past relevant work; thus, the ALJ did not go to Step 5.  (*Id.* at PageID.347).  The

ALJ therefore concluded that Plaintiff had not been under a disability, as defined in

the Social Security Act, from March 13, 2014 through December 31, 2014, the date

last insured.

### 2.   Framework for Disability Determinations

Disability is defined in the Social Security Act as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical

or mental impairment which can be expected to result in death or which has lasted

or can be expected to last for a continuous period of not less than 12 months."  42

U.S.C. § 423(d)(1)(A).  In evaluating whether a claimant is disabled, the

Commissioner is to consider, in sequence, whether the claimant: (1) worked during

the alleged period of disability; (2) has a severe impairment; (3) has an impairment

that meets or equals the requirements of an impairment listed in the regulations; (4)

can return to past relevant work; and (5) if not, whether he or she can perform

other work in the national economy.  20 C.F.R. §§ 404.1520, 416.920.[6]  The

Plaintiff has the burden of proof at steps one through four, but the burden shifts to

the Commissioner at step five to demonstrate that there is work available in the

national economy the claimant can perform.  *Walters v. Comm'r of Soc. Sec.*, 127

---

[6] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless otherwise indicated.

F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the

burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing

*Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)).

3.   <u>Standard of Review</u>

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see*

*also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under

this standard, "substantial evidence is defined as 'more than a scintilla of evidence

but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the

court does "not try the case *de novo*, resolve conflicts in evidence or decide

questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Even so, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

4.   Analysis

Plaintiff argues that the ALJ did not properly assess the opinion of his treating physician, Dr. Perez. He says the ALJ attempted to undermine Dr. Perez's opinion by noting that Dr. Perez is not a pain management specialist, and implies that the ALJ erroneously relied on Dr. Perez's failure to cite supporting objective

evidence despite Dr. Perez's narrative regarding Plaintiff's limitations.  (ECF No.
16, PageID.852).

The ALJ must balance six factors to evaluate every medical opinion.  20
C.F.R. § 404.1527(c).  These factors include: (1) whether the source examined the
claimant; (2) treatment relationship; (3) supportability of the opinion; (4)
consistency of the opinion with the record as a whole; (5) specialization of the
treating source; (6) and any other factors.  *Id.*  When, as here, a claim was filed
before March 27, 2017, the treating physician rule applies.  An ALJ must give
controlling weight to the opinion of a treating physician if: "(1) the opinion is
'well-supported by medically acceptable clinical and laboratory diagnostic
techniques' and (2) the opinion 'is not inconsistent with the other substantial
evidence in [the]case record.'"  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365,
375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527)).  This applies only when
the opinion "is based upon sufficient medical data."  *Miller v. Sec'y of Health and
Hum. Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991).  If the ALJ gives less
than controlling weight to a treating source's opinion, the ALJ must "give good
reasons" for doing so.  The reasons must be "'supported by the evidence in the
case record, and … sufficiently specific to make clear … the weight the
adjudicator gave to the treating source's medical opinion and the reasons for that
weight.'"  *Gayheart*, 710 F.3d at 376 (citations omitted).  This "ensures that the

ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

The ALJ complied with the treating physician rule here.  The ALJ addressed the factors used to evaluate medical opinions.  She identified the treating relationship between Plaintiff and Dr. Perez, his family physician who was not a pain specialist.  (ECF No. 10, PageID.346-47).  She noted that Dr. Perez's opinion was issued nearly two years after Plaintiff's date last insured, highlighting the lesser probative value of the opinion.  The ALJ also addressed the consistency of the opinion with the record and the supportability of the opinion.

Dr. Perez opined that Plaintiff could sit for zero to two hours in a workday, stand and walk for zero to two hours in a workday, and needed to lie down and rest for zero to one hour per workday.  Dr. Perez stated that Plaintiff would need to take breaks daily totaling up to an hour and would miss at least three days of work per month.  Dr. Perez said Plaintiff could frequently lift and carry up to five pounds and could never bend, squat, crawl, or climb, but could occasionally use foot controls.  On the left arm, Dr. Perez opined Plaintiff could never reach above the shoulders, grasp and hold, use fine manipulation, or push and pull, but he could occasionally do these things with the right arm.  (*Id.* at PageID.330-31).

In assessing the opinion, the ALJ stated that Dr. Perez did not sufficiently

cite objective signs, symptoms, or laboratory findings from the relevant period. (*Id.* at PageID.346). This is an important observation, because an opinion is entitled to great weight if it is supported by evidence. The ALJ went further to conclude that the opinion is not supported by the record. The ALJ discussed that records from the relevant period are limited, and that Dr. Perez's treatment of Plaintiff's back/neck and left arm issues was conservative, consisting of medication and physical therapy. In addition, Plaintiff reported caring for his needs and activities such as driving and shopping. The conservative treatment and daily activities "are inconsistent with the marked degree of limitation noted in Dr. Perez's opinion." (*Id.*). Elsewhere in the decision, the ALJ recounted the medical evidence from the relevant period. This included, for example, in July 2014, Plaintiff reported a reduction in back pain but continued difficulty walking and left arm pain. That day, he was found to have normal lower extremity strength and motor function and normal bilateral grip strength. He had normal range of motion in all joints during September 2014. (*Id.* at PageID.250, 255, 342). During the September visit, Plaintiff was able to squat and stand without difficulty, and straight leg raising test was negative. (*Id.* at PageID.255). The ALJ concluded that the objective evidence does not demonstrate an inability to perform at the light exertional level. (*Id.* at PageID.343). This is a reasonable conclusion to draw from the evidence.

The Court finds the ALJ complied with the treating physician rule related to Dr. Perez's opinion.

Plaintiff has the burden of proof on his statements of error. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). Plaintiff has not shown legal error that would upend the ALJ's decision. For all these reasons, Plaintiff's motion for summary judgment (ECF No. 16) is **DENIED**, Defendant's motion for summary judgment (ECF No. 19) is **GRANTED**, and the Commissioner of Social Security's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

Date: June 6, 2023                    s/Curtis Ivy, Jr.
                                      Curtis Ivy, Jr.
                                      United States Magistrate Judge